JOURNAL ENTRY AND OPINION
{¶ 1} This is an administrative appeal from the decision of the Village Council of Chagrin Falls granting a space variance to Yours Truly Restaurant ("Yours Truly"). Dinks II Company, Inc. ("Dinks") appeals the trial court's denial of the administrative appeal. Dinks argues that the trial court erred in finding that res judicata did not bar the variance in question and in failing to apply the applicable legal standards for the granting of a variance, and claims that the court's judgment is not supported by a preponderance of the evidence. For the following reasons, we reverse the decision of the trial court and vacate the variance granted by the village of Chagrin Falls.
 {¶ 2} This matter arises following the granting of a variance from off-street parking requirements that were triggered by a proposed expansion of Yours Truly. Yours Truly is owned and operated by Lawrence Shibley ("Shibley") and is located at 30 N. Main Street in the central business district of the village of Chagrin Falls ("Chagrin Falls"). Dink's Restaurant is located just down the street from Yours Truly. Both Yours Truly and Dink's Restaurant depend on the availability of public street parking for their customers.
 {¶ 3} Under Section 1141.05 of the Planning and Zoning Code in the Codified Ordinances of Chagrin Falls ("Zoning Code"), "eating spaces, bars and taverns" are required to provide off-street parking facilities of "one space per fifty square feet of floor area, or one space for each two seats, whichever is greater." Additionally, Section 1141.06 requires such off-street parking to be provided on the same or adjoining lot or, with the permission of the planning and zoning commission, "within 400 feet walking distance from any customer entrance to the building or use." Chagrin Falls did not require Yours Truly to provide any off-street parking, because its restaurant existed before the enactment of the off-street parking requirements. However, under Sections 1141.02 and 1145.03 of the Zoning Code, applicants would be required to comply with the offstreet parking requirements if they were to change the use of an existing building or increase the seating capacity or floor area of the existing restaurant.
 {¶ 4} In 1999, Yours Truly proposed a plan to convert existing retail space located at 6 Plaza Drive, which is an immediately adjacent property, to allow for an increase of the restaurant's floor area and seating capacity. In September 1999, Shibley wrote a letter to Chagrin Falls Administrator Ben Himes ("Himes"), requesting approval of the proposed plan. Himes advised Shibley that he could not approve the plan because such a change would trigger the obligation to provide off-street parking in accordance with the schedule set forth in Section 1141.05. Himes then advised Shibley that he could apply for a variance under Section 1111.07 of the Zoning Code.
 {¶ 5} On September 27, 1999, Shibley and the property owner of 6 Plaza Drive, Lyndall Hughes ("Hughes"), submitted an application for variance from Zoning Code Section 1141.05 to the Chagrin Falls Board of Zoning Appeals ("BZA"). At the hearing, Himes reported that the applicants would be required to provide thirty-four new parking spaces to accommodate the expansion and change in use of property. Himes further stated his view that Yours Truly sought a variance for the entire amount of parking spaces required by the Zoning Code, as they were not proposing to provide any new parking. In response, Shibley admitted that he had not proposed any new customer parking, but that he had entered into a lease with Carriage House Cleaners on West Orange Street that would allow him at least four parking spaces that could be used for employee parking. Such spaces would be more than 400 feet from Yours Truly. The members of the BZA voted three to two to deny the variance, finding that Yours Truly had not met the legal criteria for a variance.
 {¶ 6} In November 1999, the BZA placed the matter on the agenda of the Chagrin Falls council in accordance with Zoning Code Section 1111.11. Prior to the council hearing, legal counsel for Yours Truly and Shibley submitted a series of letters advocating the proposed variance. In January 2000, Shibley submitted another letter requesting that the matter be referred back to the BZA for reconsideration. The council denied this request. Shibley's attorneys then submitted a letter prior to the council meeting asking to withdraw their objection to the BZA's decision, explaining that they were not going to proceed with the variance request. The village law director advised the village council that it still had to "confirm, modify or reverse" the decision of the BZA. Council then enacted Ordinance No. 1999-70, thereby denying the parking variance "pursuant to the reasons set forth in the minutes of the meeting held on November 1, 1999."
 {¶ 7} In March 2003, Hughes applied for a second variance with regard to the property of 6 Plaza Drive. The variance application involved the same properties, the same change in use, and the same expansion. Hughes requested variances from Zoning Code Section 1141.02(c), regarding off-street parking facilities, and Section 1145.03(e), pertaining to parking facilities. Under Sections 1141.02(c) and 1145.03(e), expansion in the seating capacity of Yours Truly required the restaurant to provide a total of thirtyseven parking spaces. Yours Truly requested a variance from these requirements to allow the restaurant to provide for four off-street parking spaces for employees available at 13 West Orange Street.
 {¶ 8} In May 2003, the BZA held a hearing on the variance application. Village Administrator Himes explained that the variance was essentially the same as the variance requested in November 1999. Himes further stated that the actual variance requested by Yours Truly was for the entire parking requirement of thirty-seven spaces because Yours Truly did not provide parking that met the Zoning Code. In response, Shibley's attorney reported that Shibley had entered into a long-term lease with a dry cleaning company at 11-13 West Orange Street that had fifteen existing parking spaces and that he would use four of those spaces for employees during the day. The BZA voted to grant the variance with the condition that Shibley obtain the approval of the planning and zoning commission for a reallocation of the four existing parking spaces on West Orange Street.
 {¶ 9} In accordance with Zoning Code Section 1111.11, the BZA referred the matter to the Chagrin Falls council, which held meetings in May and July to discuss the matter. At the hearings, Dennis Zdolshek, co-owner of Dink's Restaurant, expressed his opposition to the granting of a variance because it would increase the demand on the already limited parking in Chagrin Falls. The planning and zoning commission approved the revised parking plan for the off-site location at its June 2003 meeting. On July 8, 2003, council approved Ordinance 2003-20, granting the variance at 6 Plaza Drive, as requested.
 {¶ 10} Dinks appealed the granting of the variance to the Cuyahoga County Common Pleas Court. Dinks also filed a motion to stay the execution of the administrative order, which the trial court denied. The trial court then affirmed council's granting of the variance. Dinks now appeals to this court in the three assignments of error set forth in the appendix to this opinion. We find Dinks' first assignment of error dispositive.
Standard of Review:
 {¶ 11} Dinks brings this appeal pursuant to R.C. 2506.04, which sets forth the applicable standard of review as follows:
"The court may find that the order, adjudication, or decision isunconstitutional, illegal, arbitrary, capricious, unreasonable, orunsupported by the preponderance of substantial, reliable, and probativeevidence on the whole record. Consistent with its findings, the court mayaffirm, reverse, vacate, or modify the order, adjudication, or decision ** * consistent with the findings or opinion of the court. The judgment ofthe court may be appealed by any party on questions of law as provided inthe Rules of Appellate Procedure and, to the extent not in conflict withthose rules, Chapter 2505 of the Revised Code." { ¶ 12} The Supreme Court of Ohio construed the above language in Henley v. Bd. of ZoningAppeals, 90 Ohio St.3d 142, 147, 2000-Ohio-493, and explained:
"We have distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals. The common pleas court considers the `whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. See Smithv. Granville Twp. Bd. of Trustees, 81 Ohio St.3d 608, 612, 1998-Ohio-340, citing Dukukovich v. Lorain Metro. Hous. Auth. (1979), 58 Ohio St.2d 202, 206-207.
"Our standard of review to be applied in an R.C. 2506.04 appeal is`more limited in scope.' Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34. (Emphasis in original.) `This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court.' Kisil, supra, at fn. 4. `It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The fact that the court of appeals might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.' Lorain City School District.Bd. of Edn v. State Emp. Relations Bd. (1998), 40 Ohio St.3d 257, 261."
Henley at 147.
 {¶ 13} Accordingly, when reviewing a common pleas court order that determined an appeal from an administrative agency, "we must affirm the [trial court] unless that court's decision `is not supported by a preponderance of reliable, probative, and substantial evidence.'" Russellv. Pub. Health, Hous. Appeals Dept. (2001), 142 Ohio App.3d 430, 432. (Citations omitted.) In making this determination, this court applies the abuse of discretion standard. Henley, 90 Ohio St.3d at 148. An abuse of discretion is more than an error in judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd., 66 Ohio St.3d 619, 621,1993-Ohio-122.
 {¶ 14} It is within this limited scope of review that we address Dinks' assignment of error.
 {¶ 15} As a preliminary matter, we must first address the issue of standing as raised by Chagrin Falls. In its June 10, 2004 journal entry, the trial court denied Chagrin Falls' motion for summary judgment, finding that the parking variance directly affected Dinks and, therefore, Dinks had standing to bring the appeal. We note that Chagrin Falls failed to object to this finding and also failed to appeal from this finding.
 {¶ 16} Though appellate courts have a limited scope of review on administrative appeals, the issue of standing is a question of law and accordingly shall be reviewed de novo. Shelton v. LTC ManagementServices, Highland County App. No. 03CA10, 2004-Ohio-507. The Supreme Court of Ohio has held that the right to file an administrative appeal under R.C. Chapter 2506 can be exercised by any person who "has a present interest in the subject matter of the litigation" and who has been "directly affected" by the administrative order in question. WilloughbyHills v. C.C. Bar's Sahara, Inc., 64 Ohio St.3d 24, 26-27, 1992-Ohio-111. Furthermore, this court has held that, "evidence that a zoning decision will reduce the value of his land will support a determination that a party has been directly affected by the zoning decision." Raceway Videoand Bookshop, Inc. v. Cleveland Board of Zoning Appeals (1997),118 Ohio App.3d 264, 273, citing Westgate Shopping Village v. Toledo
(1994), 93 Ohio App.3d 507, 514.
 {¶ 17} Evidence in the appellate record demonstrates that both Dink's Restaurant and Yours Truly depend on the availability of public street parking for their customers. Therefore, Dinks has a direct financial interest in the value and performance of its restaurant business that will be adversely affected by the increased strain on available parking for its customers. In addition, Dinks also has a direct financial interest in the value of the restaurant's property location. Dinks has established its burden of standing and may proceed with this administrative appeal.
 {¶ 18} In its first assignment of error, Dinks argues the trial court erred in finding that the doctrine of administrative res judicata did not bar the granting of Yours Truly's second variance application. This assignment has merit.
 {¶ 19} The applicability of res judicata is a question of law that is subject to de novo review. Rahawangi v. Alsamman, Cuyahoga App. No. 83643, 2004-Ohio-4083. "The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." Grava v. ParkmanTwp., 73 Ohio St.3d 379, 380, 1995-Ohio-331. Both theories of res judicata are used to prevent relitigation of issues already decided by a court on matters that should have been brought as part of a previous action. Lasko v. Gen. Motors Corp, Trumbull App. No. 2002-T-0143, 2003-Ohio-4103. "A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claims arising out of the transaction or occurrence that was the subject matter of the previous action." Grava, 73 Ohio St.3d at 382. The Supreme Court of Ohio has held that res judicata, whether collateral estoppel or claim preclusion, applies to those administrative proceedings that are "of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding." Set Products, Inc. v. BainbridgeTwp. Bd. of Zoning Appeals (1987), 31 Ohio St.3d 260, 261. Nevertheless, "while res judicata does apply to administrative proceedings, it should be applied with flexibility. * * * The doctrine should be qualified or rejected when its application would contravene an overriding public policy or result in manifest injustice." Jacobs v. Teledyne, Inc. (1988),39 Ohio St.3d 168, 171. (Internal citations omitted.)
 {¶ 20} Council's decision to deny the initial zoning variance was the result of administrative proceedings that were judicial in nature. The BZA conducted hearings, accepted evidence for review, and heard individual testimony on the issues. After examining the evidence, the board determined that Yours Truly had not met the criteria for a parking variance. Council affirmed the BZA's decision "pursuant to the reasons set forth in the minutes of the meeting held on November 1, 1999."[1]
Accordingly, the doctrine of res judicata applies, as the proceedings involved in the denial of Yours Truly's first variance application were judicial in nature.
 {¶ 21} Yours Truly argues that the doctrine of res judicata does not apply to the second variance application, because it withdrew its objection to the BZA's decision. The trial court agreed, finding that the doctrine of res judicata did not apply to bar the second variance application because the prior action of Chagrin Falls was merely procedural. Because of the way Zoning Code Section 1111.11 is drafted, this court is compelled to disagree.
 {¶ 22} Section 1111.11 reads as follows: "Following a decision of the Board of Zoning Appeals, each case shall be referred to Council. After reviewing the Board's decision, Council may confirm, amend or reverse the decision by a majority vote of its membership." (Chagrin Falls Ordinance 1984-20.) A plain reading of this statute forces this court to acknowledge that council's initial denial of the zoning variance was a final decision on the merits.[2] We acknowledge Yours Truly's attempt to withdraw the variance application and are persuaded by Yours Truly and the trial court's conclusions that the action of council in affirming the BZA's denial of the zoning variance was procedural. However, because the language of Zoning Code Section 1111.11 mandates that the council act on all BZA decisions, we are required to disagree and apply the doctrine of res judicata to bar Yours Truly's second variance application.
 {¶ 23} In addition, Ohio courts have repeatedly applied res judicata to multiple requests for variances. Grava, 73 Ohio St.3d 379; Rossow v.City of Ravenna, Portage App. No. 2001-P-0036, 2002-Ohio-1476; Davis v.Coventry Township Board of Zoning Appeals (Feb. 14, 2001), Summit App. No. 20085. In Grava, 73 Ohio St.3d at 383, the Supreme Court of Ohio ruled that res judicata applied to bar a second application for a zoning certificate that was based on a claim arising from a "nucleus of facts that was the subject matter of [the] first application." However, as noted in Rossow, supra:
"Res judicata will not bar the grant of a zoning application, afterdenial of a prior application covering the same property, upon a showingof changed circumstances. If there is a change in the facts raising a newmaterial issue, then res judicata will not bar the second application.Substantial differences in zoning applications can preclude theapplication of res judicata because there does not exist the samecontroversy or legal issue as was previously determined."
(Internal citations omitted); see, also, Route 20 Bowling Alley, Inc.v. City of Mentor (Dec. 22, 1995), Lake App. No. 94-L-141.
 {¶ 24} Changed circumstances sufficient to negate the doctrine of res judicata also have previously been defined by the Supreme Court of Ohio, to wit:
"Where * * * there has been a change in the facts in a given actionwhich either raises a new material issue, or which would have beenrelevant to the resolution of a material issue involved in the earlieraction, neither the doctrine of res judicata nor the doctrine ofcollateral estoppel will bar litigation of that issue in the lateraction."
 State ex rel. Westchester Estates, Inc. v. Bacon (1980),61 Ohio St.2d 42, 45.
 {¶ 25} Therefore, in order to avoid the application of res judicata, Yours Truly was required to establish a change that raised a new material issue relating to its second variance application or a change relevant to the resolution of a material issue involved in the original petition.Village of Chagrin Falls v. Geauga Cty. Bd. of Commissioners, Geauga App. No. 2003-G-2530, 2004-Ohio-5310, at ¶ 46. Yours Truly did not present evidence representing either type of change.
 {¶ 26} Yours Truly argued that because its second variance application contained a provision for off-site employee parking, changed circumstances exist. This is insufficient as the plan for off-site employee parking was discussed during the first variance application. Additionally, Yours Truly argued that the endorsement of off-site parking by the planning and zoning commission constituted changed circumstances. This is also insufficient because this change does not raise a new material issue or introduce a change that would have been relevant to the resolution of a material issue involved in the earlier action. Id. at 47. The endorsement by the planning and zoning commission did not raise a new issue, because parking has long been an issue for Chagrin Falls.
Furthermore, the BZA and council contemplated the use of off-site parking during the first variance application. Finally, Yours Truly has failed to demonstrate either overriding public policy reasons or manifest injustice that would justify the rejection of res judicata. Yours Truly argued that a rigid application of the doctrine of res judicata would deny the restaurant "all viable economic use of its land, due to the nature, size and location of the building involved." This is simply not true. Yours Truly has successfully been in business at its current location since 1982.
 {¶ 27} We are mindful of the broad deference that is to be afforded to municipalities in the exercise of local self-government, including zoning decisions. Nevertheless, in this case, Yours Truly did not demonstrate "changed circumstances" that would have allowed it to avoid the application of res judicata with respect to the zoning variance. This is not to say that Yours Truly is forever barred from obtaining a variance so that it can proceed with its expansion. However, once a variance has been denied, any subsequent application must establish a change in circumstances as required by the legal authority discussed herein.
 {¶ 28} Accordingly, we reverse the decision of the trial court and vacate the variance granted to Yours Truly by the village of Chagrin Falls.
 {¶ 29} Our determination as to Dinks' first assignment of error renders its second and third assignments of error moot.
Appendix A:
 Assignments of Error
 "I. The trial court erred as a matter of law in finding that thedoctrine of administrative res judicata did not bar the granting ofappellee's second variance application.
 II. The trial court erred as a matter of law and abused its discretionby ignoring and failing to apply the applicable legal standards for thegranting of a variance.
 III. The trial court's judgment must be reversed because it is clear,based upon a proper application of the legal standards, that the judgmentis not supported by a preponderance of the evidence as a matter of law."
It is ordered that the appellant recover from appellees costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., Concurs; Corrigan, J., Concurs in judgment only.
[1] Appellate record at 26.
[2] We disagree with the harsh result created by Zoning Code Section1111.11. Ideally, an applicant should be allowed to withdraw the request for a zoning variance. Furthermore, because of the immense parking problem in Chagrin Falls' central shopping district, any attempt by the council to regulate parking through zoning restrictions is futile.