[Cite as *Eckert v. Warren Cty. Rural Bd. of Zoning Appeals*, 2018-Ohio-4384.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| ROGER ECKERT, et al., | : | CASE NOS.  CA2017-06-095 |
| Appellants, | : | CA2017-07-107 |
|  |  | CA2017-07-108 |
| | : | CA2017-07-109 |
| - vs - |  |  |
|  | : | O P I N I O N |
|  |  | 10/29/2018 |
| WARREN COUNTY RURAL BOARD OF | : | |
| ZONING APPEALS, et al., |  |  |
|  | : | |
| Appellees. |  |  |
|  | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 16CV88681

Roger C. Eckert, P. Daniel Fedders, Carol Fedders, and Cathy Baker, Franklin, Ohio, appellants, pro se

David P. Fornshell, Warren County Prosecuting Attorney, and Adam M. Nice, Warren County Assistant Prosecuting Attorney, Lebanon, Ohio, for appellee, Warren County Rural Board of Zoning Appeals

Thomas G. Eagle, Thomas G. Eagle Co., L.P.A., Lebanon, Ohio, for appellees, SepTek, Laura DeHart, and Scott DeHart

**HARSHA, J.**

{¶ 1}   The Warren County Rural Board of Zoning Appeals ("BZA") approved a conditional-use permit and site plan for appellees, Scott and Laura DeHart, to operate a

Class 2 home-occupation business known as SepTek, which installs, cleans, and repairs septic systems off-site. Appellants, who are neighbors of the DeHarts, opposed the permit application and appealed the BZA's decision to the Warren County Court of Common Pleas, which affirmed. They now appeal to this court.

{¶ 2} Upon consideration of appellants' ten assignments of error, we conclude that the common pleas court neither erred in its application or interpretation of the law, nor was its decision unsupported by a preponderance of the evidence as a matter of law. We overrule the appellants' assignments of error and affirm the judgment of the common pleas court.

## I. FACTS

{¶ 3} Scott and Laura DeHart applied for conditional use and site-plan review for a family-owned septic-system installation, cleaning, and repair business known as Septek, which is located on property they leased (with an option to purchase) from the landowner, Steve Henderson.

{¶ 4} At the BZA hearing Warren County Zoning Inspector Mike Yetter testified that the property the DeHarts leased consisted of two parcels totaling about 16 acres; the SepTek business sits on the parcel of just over five acres on Beal Road in Franklin, Ohio. The property is zoned R1 single-family residential, and the future comprehensive plan land use for the property is also R1. SepTek employs the applicants, Scott and Laura DeHart, their two sons, who live on the property in the residential dwelling with their parents, and two nonfamily members who live and work off-site. SepTek takes waste from customers' septic tanks, off-loads it at a treatment plant off-site, and injects bio-solids used for agricultural farming on land owned by the AAA Wastewater Services treatment plant; it also installs and repairs septic systems. SepTek uses one 4,200 pump truck, a dump truck, a tractor, a backhoe, a loader trailer, and a trackhoe trailer; it has plans to buy another pump truck, skid

steer, and trackhoe in the future. The vehicles will be stored in an existing building, as well as a proposed garage and a lean-to. The Henderson Turf Farm sod business is adjacent to the property.

{¶ 5} Zoning Inspector Yetter testified that the proposed conditional use of the property complied with the review criteria of Sections 1.306.5 and 3.203.4 of the Warren County Rural Zoning Code as a Class 2 home occupation that was similar to an excavation contractor, which is expressly permitted under the code. However, he recommended the addition of several conditions to the issuance of any permit.

{¶ 6} Scott DeHart testified that the area of the property he uses for SepTek is generally not visible from the road except during winter. DeHart negotiated an agreement with AAA Wastewater Services to off-load waste at the treatment plant in return for injecting bio-solids on nearby land owned by AAA. They do not off-load or store any waste product at the property site. The trucks leave in the morning and do not return until they are done for the day. No sewage activities occur on the property. According to DeHart, noise from heavy equipment, including trucks and tractors, is caused by the activities of their neighbor, Henderson Turf Farm.

{¶ 7} Neighbors living near the property, including appellants, testified in opposition to the DeHarts' application for a conditional-use permit. They testified that the DeHarts had already been illegally operating their business without a conditional-use permit for some time, that they feared that their septic-system materials would pollute the land, creek, and drinking water in the area, the increased traffic caused noise and dust, and the business would decrease their property value. The BZA Chairman asked some of the opponents of the conditional-use permit to testify about what unique harm their property had suffered from the SepTek business, but did not preclude them from testifying about general harm.

{¶ 8} On rebuttal Scott DeHart testified that some of the traffic the permit opponents objected to was from his family's personal vehicles, and friends for nonwork-related travel. He indicated that he had the exterior of the SepTek trucks washed off-site, and the interior of the trucks washed twice a year at the AAA Wastewater Services treatment plant.

{¶ 9} The BZA conducted private deliberations and reconvened later to announce its decision to approve the DeHarts' conditional-use permit as a Class 2 home occupation, after finding that the application satisfied the applicable standards in Section 3.203.4 of the zoning code. The BZA concluded the evidence failed to establish that unique harm occurring to the opponents' property could not otherwise be mitigated by reasonable conditions, and that the opponents' testimony concerning pollution, property-value decrease, noise, and traffic were speculative potential harms to the area at large. After weighing and balancing the review criteria, the BZA found a preponderance of substantial, reliable, and probative evidence supported the approval of the conditional-use application, subject to the following additional conditions:

1. The proposed conditional land use shall only take place on the 5.002 acre site, and may not take place on the remaining 11 acre site.

2. No effluent, bio-solids, and the like shall be stored, processe[d], treated, disposed of, or dumped on the 5.002 acre site.

3. There shall be compliance with all Warren County Rural Zoning Code Standards in Section 3.203.4[A](3)(b) Class 2 Development Standards.

4. On-site vehicles and equipment storage shall be limited to one each of the following or a similar combination of like-kind vehicles: 4,200 gallon pump truck, F450 dump truck, TW30 tractor, 3,200 gallon injector, Backhoe, Cronkite 16 ft. skid loader trailer, Morton 24 ft. Track hoe trailer, Skid steer, Track hoe, and a 2nd future Pump Truck.

5. All commercial vehicles, job site materials, and equipment shall be stored inside an enclosed building except for residential uses

included in Section 3.102.4(A) and (B) Commercial and Recreational Vehicle Parking in Residential Districts.

6. The existing wooded area along the southern property shall be maintained in landscaping standards of Buffer Type D. (Sec. 3.203.4)

7. The existing wooded area along the northern pasture boundary as indicated on the site plan shall be maintained at a minimum of twice the landscaping requirement of Buffer Type D.

8. Pump trucks shall be off loaded at a treatment facility before returning to the conditional use site.

9. No cleaning out of pump trucks or injector tanks on the conditional use site.

10. There shall be full compliance with all other applicable sections of the Warren County Rural Zoning Code and Site Plan requirements.

{¶ 10} The board also approved the site plan, subject to certain conditions.

{¶ 11} Appellants and other individuals appealed the BZA's decision and conditional-use permit, naming the BZA as appellee. Their retained counsel raised several assignments of error in the Warren County Court of Common Pleas. The DeHarts and SepTek intervened as additional appellees and argued for affirmance of the BZA's decision. After weighing the entire administrative record, the common pleas court issued a detailed and reasoned decision affirming the BZA's decision. The court concluded that, it could not find that the BZA's decision was not supported by a preponderance of reliable, probative, and substantial evidence." Appellants each filed four separate pro se notices of appeal, which we consolidated under Case No. CA2017-07-095.

## II. ASSIGNMENTS OF ERROR

{¶ 12} Appellants assign the following errors for our review:

{¶ 13} THE BZA VIOLATED SECTION 1.204.3 OF THE ZONING CODE WHEN IT DELIBERATED ON THIS CASE IN PRIVATE SESSION ON APRIL 26, 2016.

- 5 -

{¶ 14} THE COMMON PLEAS COURT ERRED WHEN IT EXPRESSLY BASED ITS DECISION ON INTERVENORS' FALSE ASSERTIONS THAT BEAL ROAD IS A "STATE ROUTE" OR "STATE TRUCK ROUTE."

{¶ 15} THE COMMON PLEAS COURT ERRED IN FAILING TO UNDERSTAND THAT THE BZA IMPROPERLY RESTRICTED THE ADMISSIBILITY OF EVIDENCE, IN VIOLATION OF DUE PROCESS, BY APPLYING A BIZARRE AND UNLAWFUL "UNIQUENESS" EVIDENTIARY STANDARD.

{¶ 16} THE COMMON PLEAS COURT ERRED IN FINDING THAT THE BZA HAD NO DUTY TO SHOW HOW THE INDUSTRIAL SEPTEK OPERATION WAS "IN ACCORDANCE WITH" THE RESIDENTIAL PURPOSES OF WARREN COUNTY'S COMPREHENSIVE PLAN.

{¶ 17} THE COMMON PLEAS COURT ERRED IN FAILING TO ENFORCE THE "SPECIFICITY" REQUIREMENTS OF R.C. 303.14(C), AND CODE SECTIONS 1.204.1(D) AND 1.306.1, ALL OF WHICH LIMIT THE USES POTENTIALLY ELIGIBLE FOR A CONDITIONAL USE PERMIT.

{¶ 18} THE BZA AND COMMON PLEAS COURT ERRED BY COMPLETELY IGNORING SECTION 2.205, THE "TABLE OF USES BY ZONING DISTRICT."

{¶ 19} THE COMMON PLEAS COURT ERRED IN FAILING TO ENFORCE THE "UNIFORMITY" REQUIREMENTS OF R.C. 303.02(A) AND CODE SECTION 1.102.

{¶ 20} THE COMMON PLEAS COURT ERRED WHEN IT FAILED TO REVERSE DUE TO THE BZA'S PRACTICE OF MISAPPLYING THE CONDITIONAL USE APPROVAL CRITERIA.

{¶ 21} THE COMMON PLEAS COURT ERRED IN FAILING TO RECOGNIZE THAT THE BZA'S ATTEMPTS TO QUALIFY SEPTEK FOR CONDITIONAL USE STATUS AS A

"HOME OCCUPATION" AND AS AN "EXCAVATION CONTRACTOR" WERE UNSUCCESSFUL.

{¶ 22} THE COMMON PLEAS COURT ERRED IN FAILNG TO FIND THAT THE DECISION OF THE BZA TO APPROVE THE CONDITIONAL USE PERMIT VIOLATED THE CLEAR INTENT OF R.C. 2506.03(A)(5).

### III. STANDARD OF REVIEW

{¶ 23} "In an R.C. 2506.01 administrative appeal, the common pleas court considers the whole record and determines whether the administrative order is 'unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.'" *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 13, quoting R.C. 2506.04. "The court weighs the evidence to determine whether a preponderance of reliable, probative, and substantial evidence supports the administrative decision, and if it does, the court may not substitute its judgment for that of the board." *Id.*, citing *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979). "If it does not, the court may reverse, vacate, or modify the administrative decision." *Id.*; R.C. 2506.04.

{¶ 24} Under R.C. Chapter 2506, the standard of review for a court of appeals is even more limited. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). "The court of appeals reviews the common pleas court's judgment only on questions of law and does not have the same extensive authority to weigh the evidence." *Independence* at ¶ 14, citing *Henley* at 147, 735 N.E.2d 433. "Within the ambit of questions of law for appellate-court review is whether the common pleas court abused its discretion [and] [t]he court of appeals must affirm unless it finds, as a matter of law, that the trial court's decision is not supported by a preponderance of reliable, probative, and substantial

evidence." *Id.*[1]

{¶ 25} "In sum, the standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance. It permits reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Cleveland Clinic Found. v. Bd. of Zoning Appeals of Cleveland*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.2d 1161, ¶ 30.

## IV. LAW AND ANALYSIS
### A. Open Meetings

{¶ 26} Initially appellants assert that the BZA violated Section 1.204.3 of the Warren County Rural Zoning Code when it deliberated in private session to determine whether to approve the DeHarts' application for a conditional-use permit. Section 1.204.3 of the zoning code provides that "[a]ll BZA meetings are open to the public."

{¶ 27} As appellants concede in their reply brief, they did not timely raise this argument in their assignments of error in the common pleas court. "It is a well-established rule that 'an appellate court will not consider any error which counsel for a party complaining of a trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15, quoting *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277(1986), quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus.

{¶ 28} By failing to timely raise this issue in their appeal to the common pleas court, appellants forfeited it. *Quarterman* at ¶ 15; *United States v. Olano*, 507 U.S. 725, 733, 113

---

1. Admittedly, we find this language describing the ambit of questions of law to include whether the trial court abused its discretion. This seems contrary to the overriding principle that our review is limited and deferential. Nonetheless, we proceed under that directive.

S.Ct. 1770, 123 L.Ed.2d 508 (1993), quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Forfeiture is the failure to make the timely assertion of a right, but waiver is the intentional relinquishment of a known right. *Id.* Unlike waiver, mere forfeiture does not extinguish an error. *Id.* This general rule of forfeiture applies to administrative appeals. *See generally Ellison v. Hillsboro*, 2016-Ohio-1556, 63 N.E.3d 555, ¶ 26 (4th Dist.), and cases cited; *see also Mills v. Union Twp. Bd. of Zoning Appeals*, 12th Dist. Clermont No. CA2005-02-013, 2005-Ohio-6273, ¶ 9 (in administrative appeal from a common pleas court's affirmance of a board of zoning appeals' decision on a conditional-use permit, appellant waived [sic] constitutional claims by failing to raise them in the common pleas court).

{¶ 29} Thus, it is within our discretion to consider a forfeited claim, particularly a constitutional one, by reviewing it for plain error. *Quarterman* at ¶ 16. The burden is on the appellants to establish that "but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *Id.* And because this is a civil case, "[a]n appellate court 'must proceed with the utmost caution.'" *Risner v. Ohio Dept. of Natural Resources, Ohio Div .v Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.2d 718, ¶ 27. We are advised to strictly limit plain error to the *extremely rare* case involving *exceptional* circumstances where the forfeited error, "rises to the level of challenging the legitimacy of the underlying judicial process itself." (Emphasis sic.) *Id.*, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122, 679 N.E.2d 1099 (1997).

{¶ 30} Appellants claim that this issue is not forfeited because the BZA made "false statements" at the hearing that it was up to the board to decide whether to deliberate in public or private, which equitably estopped the BZA from relying on forfeiture on appeal.

Appellants argue that they could not have discovered the open-meetings provision of the zoning code until this appeal.

{¶ 31} But appellants were represented by counsel on appeal to the common pleas court; there was nothing to prevent them from timely raising this issue as an assignment of error in their appeal to that court. Nor are appellants mere pro se litigants. One opponent stated at the BZA hearing that he is an attorney with 25 years of experience in zoning law, and another is a retired common pleas court judge.

{¶ 32} Appellants do not even claim plain error on appeal and do not argue how this is the extremely rare case that presents the exceptional circumstances warranting this extraordinary relief. Notably, they cite no authority that supports their proposition that "when a local rule requires open meetings, state statutes or court decisions which *allow* a certain kind of meeting to be private do not abolish or negate the local rule." (Emphasis sic.) (Reply Brief, p. 5) *See* App.R. 16(A)(7); *but see State ex rel. Fenley v. Kyger*, 72 Ohio St.3d 164, 648 N.E.2d 493 (1995), where the Supreme Court of Ohio held that a city charter requirement that city council meetings be open to the public prohibited council from conducting closed executive sessions because the statutory exceptions to the open-meeting requirements were superseded by the charter. However, this case does not involve charter requirements.

{¶ 33} Under these circumstances we decline to address the merits of appellants' forfeited claim. *See Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 20 ("we decline to decide the constitutionality of R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) or whether their application in this case rises to plain error, because those issues have not been properly raised or presented"); *Cieslak v. M & C Excavating and Septic Systems*, 12th Dist. Butler No. CA2014-02-026, 2014-Ohio-3660, ¶ 23 (appellant "failed to raise this issue with

the trial court * * *, does not claim plain error here, and is consequently precluded from raising this issue on appeal").  We overrule appellants' first assignment of error.

## B. State Truck Route

{¶ 34}   In their second assignment of error appellants contend that the common pleas court erred when it expressly based its decision on the DeHarts' false assertion that Beal Road is a "state route" or "state truck route."  We reject appellants' contention.

{¶ 35}   First, they have not established the premise of their assignment of error – that the common pleas court "expressly based its decision" on the DeHarts' contention that Beal Road is either a "state route" or a "state truck route."  In its decision the common pleas court merely summarized the DeHarts' argument by stating that "[a]s regards to compatibility with other uses, Appellees note that DeHart property is located on a state truck route along two-acre minimum residential lots that are so far apart that activity on these lots can't be seen without unusual effort."  The court never stated that it agreed with the argument.  As appellants appear to concede in their reply brief by noting that "this issue may not justify reversal," they cannot establish prejudicial error.  *See Chambers v. Setzer,* 12th Dist. Clermont No. CA2015-10-078, 2016-Ohio-3219, at ¶ 7, quoting *Sparks v. Sparks*, 12th Dist. Warren No. CA2010-10-096, 2011-Ohio-5746, at ¶ 17 ("'The burden of affirmatively demonstrating error on appeal rests with the party asserting error'").

{¶ 36}   Second, assuming the trial court did determine that Beal Road is a "state truck route," that finding was supported by Scott DeHart's testimony at the BZA hearing that Beal Road is a "legal truck route."  Appellants did not object to this testimonial evidence.

{¶ 37}   Finally, appellants are barred from introducing new evidence by relying on an attachment to their appellate brief that Beal Road is a township road.  *See DiPasquale v. DiPasquale*, 12th Dist. Warren No. CA2016-04-024, 2016-Ohio-8457, ¶ 14 ("An appellate

court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter"); *Salemi v. Cleveland Metroparks*, 145 Ohio St.3d 409, 2016-Ohio-1192, 49 N.E.3d 1296, ¶ 20. We overrule appellants' second assignment of error.

### C. Improper Restriction of Evidence

**{¶ 38}** In their third assignment of error appellants claim that the common pleas court erred by permitting the BZA to improperly restrict the admissibility of evidence in violation of due process, by applying a "uniqueness" evidentiary standard. In essence they claim the BZA expanded the concept of standing into a rule of evidence that would preclude admission of harm that applied to more than one property. At the BZA hearing, the board defined unique harm as not something that affects the character of the neighborhood, but harm that was unique to the opponents or their property. The board chairman questioned many of the opponents about what unique harm they would suffer if the board granted the permit.

**{¶ 39}** Like their second assignment of error, the premise for appellants' third assignment of error is also flawed. There is nothing in the record that establishes the BZA restricted appellants' or other opponents' ability to present evidence of the harm they claimed they suffered because of the DeHarts' use of their property. Appellants and other opponents were afforded every opportunity at the hearing to present any evidence they had concerning any harm to them, their properties, or the neighborhood. In fact, the BZA conclusions of law stated, "opponents testified to generalized and speculative fears of pollution, property value decreases, noise, traffic, and that such complaints were of speculative potential harms to the area at large * * *." As the common pleas court correctly noted, it is clear that the BZA considered this testimony and despite its speculative nature, fashioned permit conditions designed to mitigate any general concerns.

**{¶ 40}** Moreover, the BZA acted within its authority to question appellants and other permit opponents about unique harm they would suffer because of the DeHarts' conditional use of the property. For third-party property owners like appellants to appeal an adverse zoning decision under R.C. 2506.01, they must have been "directly affected" by a board's decision and must have "actively participated" in an administrative hearing. *See Alesi v. Warren Cty. Bd. of Commrs.*, 2014-Ohi-5192, 24 N.E.3d 667, ¶ 19 (12th Dist.), citing *Safest Neighborhood Assn. v. Athens Bd. of Zoning Appeals*, 2013-Ohio-5610, 5 N.E.3d 694, ¶ 24 (4th Dist.). "The 'directly-affected' requirement is met where the property owner shows some unique harm that is distinct from the harm suffered by the community at large." *Alesi* at ¶ 21, citing *Safest Neighborhood* at ¶ 21.

**{¶ 41}** Finally, the appellants' claim that the BZA ignored the opponents' complaints about noise, dust, and operating hours is not supported by the decision. The BZA's summary of the hearing reflects the testimony objecting to noise, dust, and a concern about noise from truck traffic occurring as early as 7:15 a.m. But Scott DeHart countered this testimony by noting that much of the traffic complained of was not related to their SepTek business; it involved traffic from the Henderson Turf Farm, and personal vehicles and the vehicles of their friends who visit them. He also testified that the traffic related to their business was limited, e.g., trucks leaving once in the morning and coming back once in the evening, and a uniform-service truck comes only once a week.

**{¶ 42}** The BZA was free to credit the DeHarts' testimony to conclude that "there was no substantial, reliable and probative evidence in the record that any harm that any Opponent articulated unique to their property could not otherwise be mitigated with reasonable conditions." Likewise, the BZA could reasonably conclude that "[o]pponents testified to generalized and speculative fears of pollution, property value decrease, noise,

traffic, and that such complaints were speculative potential harms to the area at large." The common pleas court was not free to substitute its judgment for the BZA's judgment on these issues; it properly refrained from doing so. We overrule appellants' third assignment of error.

### D. Comprehensive Plan

{¶ 43} In their fourth assignment of error, appellants argue that the common pleas court erred in finding that the BZA had no duty to show how the SepTek operation was in accordance with the residential purposes of the Warren County Comprehensive Plan.

{¶ 44} R.C. 303.02, which is the enabling legislation for county zoning, provides that boards of county commissioners may regulate uses of land in the unincorporated area of the county "in accordance with a comprehensive plan." Under Section 1.306.5(A) of the Warren County Rural Zoning Code, in reviewing an application for a conditional-use permit, the BZA must consider "[w]hether the use deviates from the suggestions of the Comprehensive Plan." Section 1.306.5(A)(2).

{¶ 45} Notwithstanding appellants' claim to the contrary, nothing in R.C. 303.02 or the zoning code required the BZA to make a specific finding to establish that issuance of the conditional-use permit was in accordance with the county's comprehensive plan. "Contrary to appellants' assertion, the BZA is not required to state every factor listed in [the applicable zoning code provisions] to demonstrate that it has properly considered and addressed them in its determination that the proposed use meets the requirements for an acceptable conditional use." *Queen v. Union Twp. Bd. of Zoning Appeals*, 12th Dist. Fayette No. CA2015-05-011, 2016-Ohio-161, ¶ 23, citing *Hickory St. Coalition v. Akron Planning Comm.*, 9th Dist. Summit No. 21738, 2004-Ohio-2246, ¶ 26. Although "[z]oning regulations sometimes require special permit decisions to be accompanied by written findings setting forth the basis for the decision and demonstrating that each of the applicable permit criteria

was considered[,] * * * a board will not be required to issue written findings if no actual regulations require it to do so * * *." *See generally* 2 Salkin, *American Law of Zoning*, Section 14:4 (5th Ed.2018).

{¶ 46} Instead, in the absence of the evidence to the contrary, we presume the validity and regularity of the BZA's proceedings. *See, e.g.*, *Holiday Homes, Inc. v. Butler Cty. Bd. of Zoning Appeals*, 35 Ohio App.3d 161, 168, 520 N.E.2d 605 (12th Dist.1987). There is no evidence here that the BZA failed to consider the comprehensive plan. It was introduced as evidence at the hearing, and the zoning inspector testified that the plan showed that the property would remain in its present zoning of R1 residential district. And the BZA stated in its decision that it considered the review criteria in Section 1.306.5 of the zoning code.

{¶ 47} Moreover, appellants' contention that the BZA could not reasonably conclude that "this noisy and dusty 24-hour heavy trucking activity is 'in accordance with' the clear and long-term residential objectives of the Warren County Comprehensive Plan" is based on their and other opponents' testimony. However, Scott DeHart's testimony that the traffic complained of was primarily from travel by the Turf Farm and the DeHarts' family and their friends for non-SepTek purposes was in conflict with that contention. And the trial court was justified in allowing the BZA to credit the DeHarts' evidence and reject that of the appellants.

{¶ 48} The trial court correctly determined there was substantial, reliable, and probative evidence that the DeHarts' conditional use was consistent with the comprehensive plan's retention of R1 residential district zoning for the area. We overrule appellants' fourth assignment of error.

**E. Specificity Requirement**

{¶ 49} In their fifth assignment of error appellants assert that the common pleas court erred in failing to enforce the specificity requirement of R.C. 303.14(C) and Sections

1.204.1(D) and 1.306.1 of the Warren County Rural Zoning Code.

{¶ 50} "R.C. 303.14(C) authorizes county boards of zoning appeals to 'grant conditional zoning certificates for the use of land, buildings, or other structures if such certificates for specific uses are provided for in the zoning resolution[.]'" *See Families Against Reily/Morgan Sites v. Butler Cty. Bd. of Zoning Appeals*, 56 Ohio App.3d 90, 98,564 N.E.2d 1113 (12th Dist.1989), quoting R.C. 303.14(C). "The provision for conditional uses in zoning legislation is a legislative recognition that 'although certain uses are not necessarily inconsistent with the zoning objectives of a district, their nature is such that their compatibility in any particular area depends upon surrounding circumstances.'" *Chrisman v. Butler Cty. Bd. of Zoning Appeals*, 12th Dist. Butler No. CA87-12-168, 1988 WL 76819, *2 (July 25, 1988), quoting *Gerzeny v. Richfield Twp.*, 62 Ohio St.2d 339, 341, 405 N.E.2d 1034 (1980).

{¶ 51} Appellants argue that R.C. 303.14(C) limits the power of county boards of zoning appeals to approve only sufficiently "specific" conditional uses. However, the Supreme Court of Ohio implicitly rejected this contention when construing the similarly-worded statute for township boards of zoning appeals, R.C. 519.14(C). The court held that "'[t]his decision on the availability of [conditional-use] permits is made *in the ordinance, not the statute*, and so the (board's) power derives from the same source.'" (Emphasis added.) *Gerzeny* at 342, quoting 5 Williams, *American Land Planning Law*, 139, Section 148.03. Consequently, "[i]n Ohio, R.C. 303.14(C) and R.C. 519.14(C) authorize the county board of zoning appeals * * * to grant conditional zoning certificates only for the specific uses mentioned in that county's or township's zoning resolution." Meck and Pearlman, *Ohio Planning & Zoning Law*, Section 9:11 (2018 Ed.).

{¶ 52} The Warren County Rural Zoning Code permits certain home occupations in the R1 single-family residential-zoning district, including the Class 2 conditional use of

"excavation contractor" and "[o]ther similar business as determined by the BZA." Section 3.203.4(A)(3)(7) and (14). The zoning code authorizes the BZA to determine whether a business is similar to another that qualifies as a conditional use under Class 2 for home occupations. Thus, the BZA was authorized to make that determination, which was authorized by the code and is not in contravention of R.C. 303.14(C).

{¶ 53} This result is consistent with the general rule of interpretation that zoning laws are in derogation of common law because they deprive the property owner of uses to which the owner would otherwise be entitled, so they must be strictly construed in favor of the owner. *See Saunders v. Clark Cty. Zoning Dept.*, 66 Ohio St.2d 259, 261, 421 N.E.2d 152 (1981); *JSS Properties, II, LLC v. Liberty Twp. Bd. of Zoning Appeals*, 2018-Ohio-1492, __ N.E.3d __, ¶ 14 (5th Dist.); *Union Twp.-Clermont Cty., C.I.C., Inc. v. Lamping*, 2015-Ohio-1092, 31 N.E.3d 116, fn. 2 (12th Dist.).

{¶ 54} In *Boothby v. Williamsburg Tp. Bd. of Zoning Appeals*, 12th Dist. Clermont No. CA2002-02-009, 2002-Ohio-5883, we reached a similar conclusion. In *Boothby*, after neighbors filed a complaint against homeowners who owned a trucking and excavation business, the homeowners applied for a conditional-use permit as a home occupation. The BZA granted the application, the neighbors appealed, and the common pleas court affirmed. Upon further appeal to this court, we rejected the neighbors' argument that home occupation as a conditional use was strictly limited to the nonindustrial types specifically listed in the code. We reasoned that the code included the phrase "such as" to clearly show that the list of home occupations was not an exhaustive, restrictive list. Similarly, Section 3.203.4(A)(3)(a)(14) specifically authorizes "[o]ther similar business as determined by the BZA" as a permitted Class 2 home occupation conditional use in R1 residential districts. The common pleas court did not err in rejecting appellants' specificity argument. We overrule

appellants' fifth assignment of error.

## F. Table of Uses

{¶ 55} In their sixth assignment of error appellants contend that the BZA and the common pleas court erred by completely ignoring Section 2.205 of the zoning code, the "Table of Uses by Zoning District."

{¶ 56} Appellants concede that they did not timely raise this issue in their initial brief in their appeal to the common pleas court, but assert that they referred to Section 2.205 in their reply briefs in that court. But because appellants are precluded from raising new issues in a reply brief, they forfeited this issue on appeal. *See State v. West*, 2018-Ohio-640, __ N.E.3d __, fn. 4 (12th Dist.) ("it is a well-established rule that an appellant may not raise new arguments or issues in his reply brief").

{¶ 57} Nor do appellants claim plain error. In fact, they additionally concede that Section 2.205 does not specifically prohibit a septic-system installation, cleaning, and repair business like SepTek in an R1 residential-zoning district. And as the DeHarts note Section 2.203(A) of the zoning code provides that "[p]ermitting of a use not listed in the Table of Uses By District shall depend on the Zoning Inspector convening the Board of Zoning Appeals (BZA) to make a determination as to whether the use not listed shall be allowed as a permitted or conditional use or otherwise prohibited, based on being similar or not to one or more use that is listed." The BZA followed that procedure here. We overrule appellants' sixth assignment of error.

## G. Uniformity and Spot Zoning

{¶ 58} In their seventh assignment of error appellants claim that the common pleas court erred in failing to enforce the uniformity requirements of R.C. 303.02(A) and Warren County Rural Zoning Code Section 1.102 which provide that all zoning regulations "shall be

uniform for each * * * use throughout any district or zone." Appellants contend that the BZA's approval of the DeHarts' conditional-use permit in the R1 residential-zoning district constituted spot zoning, which violated the uniformity provisions.

{¶ 59} "'Spot zoning' refers to the singling out of a lot or a small area for discriminatory or different treatment from that accorded surrounding land which is similar in character." *Willott v. Beachwood*, 175 Ohio St.557, 559, 197 N.E,2d 201 (1964). That is, "[s]pot zoning involves an unlawful departure from a community's zoning ordinance." Meck and Pearlman, *Ohio Planning & Zoning Law*, Section 8:41 (2018 Ed.).

{¶ 60} This case does not involve an unlawful departure from the zoning code; instead, it represented the application of the conditional-use provisions for Class 2 home occupations allowed in R1 residential-zoning districts. These conditional-use zoning provisions uniformly apply throughout the zoning district, and the conditional use sought by the DeHarts for the property was permissible under the zoning code. *See Anderson v. Vandalia*, 159 Ohio App.3d 508, 2005-Ohio-118, 824 N.E.2d 568 (2d Dist.) (city council's decision to approve application for conditional-use permit did not constitute illegal spot zoning because property had been previously rezoned by initiative petition and the conditional use sought by the applicant was permissible under the property's existing zoning designation).

{¶ 61} As another court of appeals observed, the mere fact that "a use has been approved on a property that is not a permitted use cannot, by itself, constitute spot zoning. If this were true, then all use variances would be unconstitutional." *State ex rel. Phillips Supply Co. v. Cincinnati*, 2012-Ohio-6096, 985 N.E.2d 257, ¶ 50 (1st Dist.). And appellants cite no pertinent authority holding that the approval of a conditional use pursuant to applicable, existing zoning code provisions constitutes illegal spot zoning. We overrule appellants' seventh assignment of error.

## H. Conditional-Use Criteria

{¶ 62} In their eighth assignment of error appellants argue that the common pleas court erred when it failed to reverse the BZA's decision because of the board's misapplication of the conditional-use approval criteria.

{¶ 63} Section 1.306.1 of the Warren County Rural Zoning Code provides that "[a] conditional use may only be approved if the BZA finds that proposal is in accordance with this Section and meets applicable use-specific requirements specified in Article 3, Chapter 2, or any additional conditions specified by the BZA."

{¶ 64} Section 1.306.5 sets forth the following twelve review criteria:

(A) In reviewing conditional uses, the BZA shall consider the following in the interest of public health and safety, public convenience, comfort, prosperity, or general welfare:

(1) The use is a conditional use, permitted with approval by the BZA, in the district where the subject lot is located; (except as provided in Section 1.308.5)

(2) Whether the use deviates from the suggestions of the Comprehensive Plan; and

(3) The conditional use will not substantially and/or permanently injure the appropriate use of neighboring properties and will serve the public convenience and welfare.

(B) In order to approve a conditional use, the BZA shall use the following review criteria:

(1) The use will be harmonious with, and in accordance with, the purpose of this zoning code; and,

(2) The use will conform to the general character of the neighborhood in which it will be located; and,

(3) Imposing special conditions or requirements that would mitigate the special characteristics which are inherent to the use and enable compatibility with the existing neighborhood; and,

(4)  The use complies with all applicable provisions of this zoning code, including any use specific standards; and,

(5)  The use be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity, and the use will not change the essential character of the same area; and,

(6)  The use will not create excessive additional requirements, at public cost, for public facilities and services and will not be detrimental to the economic welfare of the community; and,

(7)  That the proposed use at the particular location is necessary or desirable to provide a service or facility which will contribute to the general well-being of the neighborhood or the community; and,

(8)  That such use will not be detrimental to the health, safety, or general welfare of persons residing or working in the vicinity, or injurious to property or improvements in the vicinity; and,

(9)  Only one conditional use is allowed on a parcel of property.

{¶ 65} And Section 3.203.4(A)(1) of the zoning code provides the following use-specific requirements for Class 1 and Class 2 home occupations as a conditional use in residential zoning districts in rural Warren County:

(A)  **Home Occupations:** This sub-section allows limited business uses as a home occupation.  There are two (2) classifications of home occupations – Class 1 and Class 2.  Class 2 allows for greater intensity.

(1)  **All Uses:** A home occupation shall be permitted within the principal dwelling unit, provided that:

(a)  The use is clearly incidental and subordinate to the principal residential use;

(b)  The use is compatible with other uses, maintains and preserves the character of the neighborhood, and does not create a nuisance or detract from residential function and tranquility;

- 21 -

(c) The use does not produce offensive noise, vibration, smoke, dust, odors, lighting, electrical interference, radioactive interference, radioactive emission, environmental pollution, or other nuisances;

(d) The use does not exhibit exterior indication of its presence or any variation from residential appearance, except for a sign as permitted in (h);

(e) Display of Goods: No commercial display of materials, merchandise, goods, or equipment is visible from public rights-of-way or surrounding properties;

(f) Operating Hours: Client visits and the delivery of merchandise are restricted to no earlier than 8:00 a.m. daily, except on Sundays, which are restricted from noon to 6:00 p.m.;

(g) Sales: Only products or services generated by the home occupation shall be offered for sale. In addition, incidental retail sales are allowed in connection with a permitted home business (for example, a beautician may sell hair products to customers). No outdoor display of products for sale is permitted;

(h) Signage: Signage is limited to one (1) non-illuminated nameplate sign for identification purposes, not greater than four (4) square feet in area, mounted on the front face or driveway lamppost of the dwelling;

(i) Truck Traffic: The use does not require the delivery or shipment of materials, merchandise, goods, or equipment by other than passenger motor vehicles and small parcel delivery services; and,

(j) Vehicles: The use does not have more than one vehicle or trailer which is identified by a sign, logo, or emblem of the occupation, business, or activity that is visible from adjoining property or public rights-of-way.

**{¶ 66}** Appellants claim that the BZA misapplied the conditional-use approval criteria in Sections 1.306.5 and 3.203.4 by not treating them each as mandatory requirements that must be satisfied to obtain approval of a permit, and instead weighing and balancing them.

**{¶ 67}** In its decision, the BZA cited both of these and other applicable sections by stating that "[d]uring deliberations, the BZA discussed the applicable law, including without

limitation Ohio Revised Code Section 303.14(C), the Warren County Zoning Code Section 3.203.4 Home Uses, the review criteria in Zoning Code Section 1.306.5, and the standards in Zoning Code Section 3.203.4(3)(b)[;] also discussed was Section 3.203.4(A)(3)[a](7) and (14) Class 2 Uses." And as noted previously, the BZA did not need to discuss Section 2.205, which appellants admit did not prohibit the DeHarts' conditional use.

{¶ 68} The BZA also had no duty to discuss each of the zoning criteria to establish that it properly considered and applied them. *Queen*, 2016-Ohio-161, ¶ 23, citing *Hickory St. Coalition*, 2004-Ohio-2246, ¶ 26; 2 Salkin, *American Law of Zoning*, Section 14:4 (5th Ed.2018). And despite appellants' claims to the contrary, the BZA did conclude that the DeHarts' conditional use "satisfies the applicable standards set forth in Zoning Code Section 3.203.4," i.e., that the use met the pertinent criteria.

{¶ 69} The BZA further concluded that "after weighing and balancing the Review Criteria in Zoning Code Section 1.306.5 and Development Standards of Section 3.203.4(A) and 3.203(A)(3)(b), the BZA finds a preponderance of substantial, reliable and probative evidence in the record supports the approval of the Conditional Use Application subject to conditions of approval." Appellants claim that this was improper because the weighing and balancing established that the BZA did not treat each of the criteria as mandatory. The language of Section 1.306.5(A) and (B) does not state that a conditional-use permit cannot be approved unless each of the criteria is satisfied, with the former subsection stating that the BZA "shall consider" them and the latter subsection stating only that it "shall use the following review criteria."

{¶ 70} In assessing the propriety of the BZA's decision, it is important to remember that "[l]ocal zoning authorities have significant discretion to determine whether or not a proposed use complies with the special permit criteria, and courts will generally defer to their

decisions." 2 Salkin, *American Law of Zoning*, Section 14:9 (5th Ed.2018). The concerns raised by appellants about potential contamination of their property and water were addressed by the BZA's inclusion of conditions including no effluent or bio-solids being stored, processed, treated, disposed, or dumped on the property, the pump trucks being off-loaded at a treatment facility before returning to the property, and no cleaning of the pump trucks or injector tanks on the property. And additional concerns about noise, dust, and traffic related to the proposed use were the subject of conflicting testimony, which the BZA was free to resolve in favor of the DeHarts.

{¶ 71} There was substantial, reliable, and probative evidence that the conditional use is clearly incidental and subordinate to the principal residential use of the property; the use is compatible with other uses, maintains and preserves the character of the neighborhood, and does not create a nuisance or detract from residential function and tranquility; and the use does not produce offensive noise, vibration, smoke, dust, odors, lighting, electrical interference, radioactive emission, environmental pollution, or other nuisances. Under these circumstances, the common pleas court properly determined that the BZA's decision approving the conditional-use permit was supported by the requisite evidence. We overrule appellants' eighth assignment of error.

### I. Home Occupation and Excavation Contractor

{¶ 72} In their ninth assignment of error, appellants assert that the common pleas court erred in failing to recognize that the BZA's attempts to qualify SepTek for conditional-use status as a "home occupation" and as an "excavation contractor" were unjustified. The BZA determined that the DeHarts' business, SepTek, qualifies as a Class 2 home occupation because it is similar to the permitted use of an excavation contractor under Section 3.203.4(A)(3)(a)(7) and (10). These sections list "[e]xcavation [c]ontractor" and "[o]ther

similar business as determined by the BZA" as permitted Class 2 home occupation uses in residential zoning districts like R1.

**{¶ 73}** Appellants claim that the DeHarts' business does not qualify as a home occupation because Section 3.203.4(A)(1) requires that the home occupation be "within the principal dwelling unit." We reject appellants' claim because Section 3.203.4(A)(1) does not state that the use must only be conducted within the dwelling unit; it sets forth requirements if the use is conducted in the dwelling unit on the property. Therefore, the mere fact that most of SepTek's business will occur off the property does not prohibit the DeHarts' conditional use; if this were true, then approved Class 2 home occupation business uses like "[e]xcavation contractor," "[m]echanical, [e]lectrical, HVAC, [p]lumbing [s]ervice [c]ontractor," "[t]ractor [t]railer [o]perator," and "[v]ending off-site [s]ervice and [e]quipment [p]rovider" would never be approved because the majority of the work is performed off-site. In addition, the fact that the DeHarts store vehicles involved in their business outside their dwelling unit does not disqualify the conditional use; Section 3.203.4(A)(3)(b)(1) authorizes the business to include an accessory structure outside the principal residence. And the BZA included as a condition in the approved permit that "[a]ll commercial vehicles, job site materials, and equipment shall be stored inside an enclosed building except for residential uses included in Section 3.102.4(A) and (B) Recreational Vehicle Parking in Residential Districts."

**{¶ 74}** Appellant also claims the business is not "clearly subordinate and incidental" to the DeHarts' dwelling in accordance with Section 3.203.4(A)(1)(a). As previously discussed, the record contains substantial, reliable, and probative evidence that the conditional use is clearly incidental and subordinate to the principal residential use of the property where the sewer installation, cleaning, and repair occurs off-site, no waste is stored, off-loaded, or injected on the property, and the vehicles are cleaned off-site.

{¶ 75}  Appellants also claim that BZA erred in issuing the conditional-use permit because – as the board conceded – Septek not an "excavation contractor."  But appellants' acknowledge that Septek did not have to be an excavation contractor to qualify as a permitted Class 2 home occupation under Section 3.203.4(A)(3)(a); it was sufficient that the BZA determined that it constituted an "[o]ther similar business."  Section 3.203.4(A)(3)(a)(14). Instead, appellants repeat their claim from their fifth assignment of error that the BZA could not lawfully approve a "similar business" because the language violated the specificity requirement of R.C. 303.14(C) and Sections 1.204.1(D) and 1.306.1 of the zoning code.  For reasons previously discussed, we reject this claim.  We overrule appellants' ninth assignment of error.

### J.  R.C. 2506.03(A)(5)

{¶ 76}  In their tenth assignment of error, appellants contend that the common pleas court erred in failing to find that the BZA's decision to approve the conditional-use permit violated the clear intent of R.C. 2506.03(A)(5).

{¶ 77}  Appellants forfeited this contention by failing to raise it below.  *Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15.  And they neither claim nor establish plain error.  As BZA argues, the purpose of R.C. 2506.03(A)(5) is to permit an appellant to ask the court to hear additional evidence when the board fails to "file with the transcript, conclusions of fact supporting the final order, adjudication, or decision appealed from."  Appellants never requested that the trial court hear additional evidence, and the record establishes that BZA complied with its duty to file with the transcript its decision containing conclusions of fact supporting its approval of the DeHarts' conditional-use permit. We overrule appellants' tenth assignment of error.

## V. CONCLUSION

{¶ 78}  The common pleas court did not abuse its discretion as a matter of law; nor did it err in its application or interpretation of the law; nor was its decision unsupported by a preponderance of the evidence as a matter of law.  Having overruled appellants' assignments of error, we affirm the judgment of the common pleas court.

{¶ 79}  Judgment affirmed.

ABELE and HOOVER, JJ., concur.

Harsha, J., of the Fourth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.

Abele, J., of the Fourth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.

Hoover, J., of the Fourth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.